-King, J.,
delivered the opinion of tlie court.
The writ of error herein was issued to the district court of Weld county to review a judgment of said court rendered in favor of the defendants, in the sum of $792.40, upon the following facts:
April 10th, 1907, Joseph E. Painter purchased from S. D. McDaniel fifty-one head of thoroughbred Hereford cows with twenty calves by their sides, -for the agreed price of $2,860, in payment of which he gave his two promissory notes, one for the sum of $2,800- payable in six months, and one for $60 payable in one year after date, and, to secure the same, gave his chattel mortgage upon all of said stock. The mortgage was duly recorded in Weld county, Colorado, April 12th, 1907. September of that year McDaniel died, and plaintiff Ellison, a resident of Colorado Springs, El Paso county, was, by the couhty court of that county, appointed administrator of the estate. Prior to maturity, payments were made on the notes, reducing the principal to about $2,200. At the *324 maturity of the last note the administrator extended said chattel mortgage until and including the 15th day of February, 1909, by sworn statement filed in Weld county, in conformity with the statute. July 6th, 1908, in a suit pending in the district court of Weld county between said Painter and one Wilcox as partners, in which Wilcox sued his partner Painter for an accounting of partnership matters, and in which the stock mentioned was claimed to be partnership property, defendant, Tuckerman, was appointed receiver, and, by the court, directed to take possession of this and other stock, as receiver, and to feed and care for the same, and also directed to notify the mortgagees of such order. About July 11th the receiver sent written notice of this order to the plaintiff at Colorado Springs, and on the 15th plaintiff answered, notifying the receiver of his mortgage, and further warning him not to interfere with the stock or incur any expense with respect thereto. This notice was received by Tuckerman in due course of mail, but in the meantime, and on the 13th of July, he had taken possession of the stock and placed it in a pasture belonging to the defendant Day, under a contract to pasture the same for an agreed price. Day knew of the chattel mortgage, had read it, discussed it, and took the stock with such knowlédge, after assurance from the receiver that he would be paid. Most of the stock was retained by Day until taken from him under writ of replevin, as hereinafter stated; the rest was kept by the receiver. Plaintiff was not notified that the receiver had taken possession of the stock until he attempted to foreclose the mortgage. On February 19th, four days after the date to which the mortgage was extended, the administrator demanded possession of the cattle, but such possession was refused by the defendants except upon condition that they be paid for pasturage and feeding, approximating the amount of the judgment. By permission of the district court plaintiff brought re *325 plevin against the receiver and Day for possession of the stock, or its value, and, under proper writ, took the stock, and thereafter sold it under the terms of the chattel mortgage for an amount less than the mortgage debt. At the time the stock was taken by the receiver it was' in the possession of Painter, upon a ranch which belonged to him, or to the co-partnership, and was removed to another pasture because it was better.
Plaintiff in error contends that his mortgage was a first and prior lien; that' he had a reasonable time after maturity of the mortgage as extended in which to take possession, particularly in view of the fact that defendants had actual notice of his lien when they received the stock. He also contends that under the statute he had thirty days after maturity of said mortgage as extended in which to take possession, and that thirty days is a reasonable time. Defendants in error contend that the 15th day of February, the day fixed as the date to which the extension of the lien was limited, marked the life of the lien, and that no time thereafter is allowed in which to take possession; and, further, that the agister’s lien, under the circumstances, was never subordinate to that of the chattel mortgage, but was always a prior lien, and further assert equities in their favor. The attorney for the defendant Tuckerman also makes the contention that the consent of the mortgagee for the defendants to feed the stock is implied from the facts in evidence; that the extension of the mortgage was illegal and of no effect, because the present law permitting extension by affidavit did not go into effect until after the execution and delivery of the chattel mortgage.
1. By virtue of the contractual provisions contained in the chattel mortgage, together with the provisions of the statute permitting the mortgagor to retain possession of the mortgaged chattels until maturity of the mortgage, in case a stipulation to that effect is incorporated in the *326 mortgage and that instrument duly acknowledged and recorded, a lien, both contractual and statutory, is created, which is and remains prior and paramount to any subsequent lien created by contract of any kind to which the mortgagee is not a party or to which he does not give consent, actual or implied. The mortgagor alone cannot bind the property nor make it liable for liens for any purpose except as to his equity or interest therein in excess of the mortgage debt.
2. The agister’s lien, the benefit of which is claimed by the defendants, is purely a statutory lien; it did not exist at common law. But we think it does not attach in the absence of relations or arrangements which amount to a contract, express or implied, between the agister and the owner of the property or of some interest therein, and then only to the extent of the interest of the person by whom the property is “entrusted” to the keeping of the agister. — Auld v. Travis, 5 Colo. App., 535, 541, 39 Pac., 357; Hammond v. Danielson, 126 Mass., 294. Upon the question as to whether an agister’s statutory lien is superior to a prior chattel mortgage lien, there is- conflict of opinion, and courts of high repute have reached diverse conclusions. But we think the better rule is that the holder of a valid chattel mortgage, duly acknowledged and recorded, cannot be divested of his lien or subordinated therein to the claim or lien of an agister who takes the property at the instance or request of a mortgagor, or any other person, without the knowledge and consent of the mortgagee, except, perhaps, in case of necessity or some emergency taking it out of the rule, which does not here exist. We are satisfied with the reasoning and adopt the rule of the courts as found in the following decisions : Sargent v. Usher, 55 N. H., 287, 20 Am. Rep., 208; Charles v. Neigelsen, 15 Ill. App., 17; McGhee v. Edwards, 87 Tenn., 506, 11 S. W., 316, 3 L. R. A., 654; Hanch v. Ripley, 127 Ind., 151, 26 N. E., 70, 11 L. R. A., 61; Everett *327 v. Barse Live Stock Comm. Co., 115 Mo. App., 482, 88 S. W., 165; National Bank v. Jones, 18 Okla., 555, 91 Pac., 191, 12 L. R. A., 310, 11 Ann. Cas., 1041; Wall et al. v. Garrison et al., 11 Colo., 515, 19 Pac., 469. Numerous cases in support of this view are collated in a case note to National Bank v. Jones, supra, in addition to which we cite 1 Jones on Liens, sec. 691; 19 Am. & Eng. Enc. of Law (2nd ed.), p. 438. Counsel for defendants frankly admit that such is the majority rule in the courts of the United States, but insist upon the exceptions to that rule, and the benefit of the particular conditions found in the instant case. Case v. Allen, 21 Kan., 217, 36 Am. Rep., 425, and Smith v. Stevens, 36 Minn., 303, 31 N. W., 55, cited and relied on by defendants, were cases in which an agister’s lien was held superior to a prior recorded mortgage lien, but the reasoning does not change nor shake our conviction that the other is the sounder and .the better rule. As was well said by Berkshire, J., in Hanch v. Ripley, supra, in construing the statute of Indiana, “The language employed in the statute is general in its character. It does not seem to have been the intention of the legislature to do more than to create a lien in favor of the classes of persons named; and, not having expressed any intention of giving to these persons superiority over other lienholders, we think it is but fair to presume that it was the intention of the legislature to place them on a common plane with other lienholders, the first in the order of time having superiority. As the agister’s lien depends alone upon the statute it can have no greater force than the statute gives it; and, as the legislature have, as we have said, manifested no intention of giving to it superiority over other liens, it can have none.” If the legislature, in passing the lien law now under consideration, intended to give superiority to the subsequent agister’s lien, we •would be disposed to accept the view taken by the supreme court of New Hampshire in Sargent v. Usher, supra, *328 quoted with approval in Charles v. Heigelsen, supra, as follows: ‘ ‘ The idea that a lien may be created by a contract of the possessor of animals for their keeping, the owner being in no way privy to such contract, when no rights whatever, as against the owner, could be conferred or created by a contract of sale, seems anomalous, to say the least. Such a thing would, as it seems to me, be a violation of the fundamental rights of property guaranteed by the constitution; and, if the legislature had undertaken by this act to create a lien, to arise on such a state of facts, I think it would be the duty of the court to hold the act, so far, unconstitutional and void. But I do not think any such intention is to be found in the statute. In giving this specific lien, I think the legislature used the word in its legal and generally accepted sense, and that implies some privity between the owner, or person having the right of disposing of the goods, and him in whose favor the lien is claimed; and that by ‘entrusted’ is meant entrusted by the owner or other person having authority to pledge the animals for such a purpose, that is, to suspend the owner’s right of possession until the charges are paid.” In McGhee v. Edwards, supra, it is said in substance that to permit the mortgagor to encumber the property to its full value, and_ consequent destruction to the mortgagee, is as fatal to the latter’s rights, and defeats as effectually the policy of our registration laws, as if the mortgagor were allowed to sell the property to a purchaser who was in fact ignorant of the mortgage, and thus defeat the lien of the mortgagee.
The language above quoted so aptly applies to this case that little more need be said. We shall not assume that our legislature intended such unjust and inequitable, if not unconstitutional, results as would follow from the interpretation.sought to be put upon our statute, so long as it is susceptible of the interpretation which we have given it. As to the defendants, the lien which they ac *329 quired attached only to such rights and interest as belonged to the mortgagor, Painter, or the co-partners, at the instance of whom the property was seized and cared for by the defendants.
3. By reason of the express notice given by the mortgagee herein to the defendants, warning them not to incur any expense on account of the mortgaged stock, his consent thereto cannot be implied. This conclusion is strengthened and fortified by the further-fact that plaintiff had no knowledge or notice that, notwithstanding his warning, defendants had taken possession of, or were feeding the stock. He was under no obligation, legal or equitable, after such warning, to make further inquiry.
4. It is contended by defendants that under the act permitting extension of chattel mortgages by affidavit of the mortgagee (see. 520, Bev. Stats. ’08), the rights of junior lienors attach eo instante of the expiration of the time mentioned in the affidavit or sworn statement. With this contention we do not agree. The act of April 9th, 1907, Session Laws, ’07, p. 258, Bev. Stats., ’08, sec. 520, provides that the lien of a recorded chattel mortgage may, within thirty days after the maturity of the debt secured thereby, be extended by the mortgagee by filing a sworn statement showing certain matters including the period during which he consents to extend the mortgage, “and thereupon the lien of the mortgage shall be extended for such designated period. At the expiration of said extended period said mortgage, and the lien thereof, may be again extended for another period, not exceeding two years, with like effect, ’ ’ and in the same manner, until the indebtedness secured shall have been paid, or barred by the statute of limitations. We think this statute, reasonably construed, means that upon compliance with its requirements, the maturity of the mortgage is extended from the date given therein as the maturity of the debt to the end of the extended period, and that thereupon, in *330 foreclosing Ms security, the mortgagee has all the rights theretofore recognized upon foreclosure at maturity of the debt, including a reasonable time in which to take or demand possession, but excepting, perhaps, the statutory right to thirty days after maturity within which to take possession of the chattels.- — Rev. Stats., ’08, sec. 518. This provision seems to be limited to thirty days after maturity of the debt, and it is plain that the extension of the mortgage by this, method does not affect the maturity of the debt. Some act on the part of the mortgagor would be necessary to extend the debt, and thus affect the running of the statute of limitations. But it is not necessary to rely upon this provision of the statute. The right to a reasonable time after maturity of the mortgage within which to take possession has always been recognized by the courts of this state. — Stanley v. Coal Co., 24 Colo., 103, 49 Pac., 35; Cassell v. Deisher, 39 Colo., 367, 372, 89 Pac., 773; Bradford v. Roberts, 46 Colo., 330, 104 Pac., 391; Babbitt v. Bank, 50 Colo., 258, 108 Pac., 1003. Since the adoption of section 518, and because of it, thirty days after maturity of the debt have been regarded as constituting a reasonable time in which to act. Prior thereto the time varied from a few days to several weeks, according to circumstances. In this case the mortgagee resided a long distance from the place where the cattle were kept. He had no knowledge of any exigency demanding unusual diligence-. He acted in perfectly good faith. The situation of defendants was not changed nor their interests prejudiced by the delay. Therefore, the demand for possession made by plaintiff February 19th (only four days after maturity of the mortgage as extended), upon defendants, who -at the time of such maturity were, and for a long time prior thereto had been, wrongfully in possession of the chattels, as against the plaintiff, mortgagee, if necessary at all, was manifestly made within a reasonable time and preserved the rights of the plaintiff. In so far *331 as this view conflicts with Rosenbaum Bros. & Co. v. Ryan Bros. Co., 33 Mont., 424, 84 Pac., 1120, we are not in accord with that decision.
5. The specific provision of the statute relied on, providing for an extension of chattel mortgage liens by filing a sworn statement, was passed April 9th, 1907, and took effect ninety days thereafter, subsequent to the execution, delivery and recording of the chattel mortgage, but before the extension was made. It is purely a remedial statute amendatory of an act theretofore existing, and applied to mortgages in force at the time it became effective as well as to those subsequently executed, and is not obnoxious to the constitutional inhibition against retrospective legislation. — Aultman & Taylor Machinery Co. v. Fish et al., 120 Ill. App., 314.
Defendants make a strong appeal to the equities alleged to exist in their favor under the facts of the ease. This is not a case of equitable cognizance. Plaintiff may well stand upon his strict legal rights. However, we think the equities are with the plaintiff. Defendant Day, who holds the larger part of the claim for feed and pasturage, knew of the mortgage, read and discussed it before accepting the stock, and after assurance by his co-defendant that he'would be paid. Fair warning had been given by the plaintiff. The order of the court directing the receiver to take charge of and feed the stock as partnership property affords no protection to the defendant against the plaintiff in this case. Plaintiff was not a party to that proceeding, and it may well be assumed that both the court and the defendants intended and expected that the charge'or cost of pasturage should be a charge upon the partnership, or the mortgagor, and a lien upon the equity only in the stock over and above the mortgage, whether that equity belonged to the mortgagor or to the partnership. Furthermore, there is nothing in-the evidence which plainly shows, or from which a strong infer *332 ence can be drawn, tliat the mortgagor would not have cared for and fed the stock, as he was under obligations to do by virtue of his relation to the property, as well as by the terms of the mortgage. The element of necessity, or emergency, on the part of the claimants of the agister’s lien, for feeding the stock in order to save or preserve it, is not shown to have existed to the extent that a lien should be given therefor superior to that of the plaintiff:. The evidence shows that a charge amounting to more than one-third the value of the stock was made against it without a vestige of authority, actual or implied, from the mortgagee. To permit this to be done would concede the right of confiscation by virtue of the statute.
By a late decision of the supreme court, Rohrer v. Ross, 53 Colo., 328, 125 Pac., 489, which the diligence of counsel did not disclose, and which has come to our attention since writing the foregoing opinion, the law upon the question of priority, as between the lien claimants herein, is settled, and the views hereinbefore expressed are in harmony therewith.
The judgment is reversed and the cause remanded with instructions to the trial court to enter judgment in favor of the plaintiff.
Reversed and Remanded. :